It is undisputed that the four absentee ballots actually cast for the appellee John Cox, Jr., and counted by the trial court, were either witnessed by two persons or were notarized. See Ala. Code 1975, § 17-10-7. The majority's analysis of Ala. Code 1975, § 17-10-4, violates well-established principles of statutory construction. Therefore, I respectfully dissent.
Section 17-10-4 provides in pertinent part:
 "The application required in Section 17-10-3(a) shall be filed with the person designated to serve as the absentee election manager. The application shall be in a form prescribed and designed by the Secretary of State and shall be used throughout the state. Notwithstanding the foregoing, handwritten applications can also be accepted at any time prior to the five *Page 410 
day deadline to receive absentee ballot applications as provided in Section 17-10-3(a). The application shall contain sufficient information to identify the applicant and shall include the applicant's name, residence address, or such other information necessary to verify that the applicant is a registered voter. Any applicant may receive assistance in filling out the application as he or she desires, but each application shall be manually signed by the applicant and, if he or she signs by mark, the name of the witness to his or her signature shall be signed thereon."
(Emphasis added.)
The majority nullifies every ballot obtained by an application bearing the signature of a designee. Nowhere has the legislature suggested such a result. Significantly, § 17-10-7 expressly and specifically nullifies only ballots that are cast without two witnesses or notarization. Specifically, by Act No. 96-885, 1996 Ala. Acts, p. 1699, the legislature substantially strengthened the requirements of § 17-10-7 by adding the following language to the affidavit form:
 "IF YOUR AFFIDAVIT IS NOT SIGNED (OR MARKED), OR IF YOUR AFFIDAVIT IS NOT WITNESSED BY TWO WITNESSES 18 YEARS OF AGE OR OLDER OR A NOTARY PUBLIC OR OTHER OFFICER AUTHORIZED TO ACKNOWLEDGE OATHS, PRIOR TO BEING DELIVERED OR MAILED TO THE ABSENTEE ELECTION MANAGER, YOUR BALLOT WILL NOT BE COUNTED."
(Emphasis added.) In that same act, the legislature also made certain changes to Ala. Code 1975, § 17-10-4, the section involved in this case. None of those changes, however, were directed at the practice of securing an absentee ballotapplication by the authorized signature of one other than the voter. More specifically, the legislature did not change a word of the language at issue in this case, namely: "Any applicant may receive assistance in filling out the application as he or she desires, but each application shall be manually signed by the applicant. . . ." Had the legislature discerned any such problems with § 17-10-4 as are posited by the majority of this Court, it had before it, when it adopted Act No. 96-885, a grand opportunity at that time to address them. It did not do so.
Section 17-10-7 does not provide that ballots obtained over the signature of a designee are to be rejected. Clearly, had the legislature intended that result, it knew how to say so. It is not the function of the judiciary to rewrite statutes.
Moreover, § 17-10-17(a) provides:
 "(a) Any person who willfully changes an absentee voter's ballot to the extent that it does not reflect the voter's true ballot, any person who willfully votes more than once by absentee in the same election, any person who willfully votes for another voter or falsifies absentee ballot applications or verification documents so as to vote absentee, or any person who solicits, encourages, urges, or otherwise promotes illegal absentee voting, upon conviction, shall be punished by imprisonment in the penitentiary for not less than one nor more than two years, or by a fine of not less than $500.00 nor more than $2,000.00, or by being both fined and imprisoned. Any person who willfully aids any person unlawfully to vote an absentee ballot, any person who knowingly and unlawfully votes an absentee ballot, and any voter who votes both an absentee and a regular ballot at any election shall be similarly punished."
(Emphasis added.) As the emphasized provisions illustrate, it is the ultimate act, that is, the act of actually casting a fraudulent ballot, that is the object of the restrictions in Chapter 10 of Title 17 and of § 17-10-4 in particular. No illegality can materialize until, and unless, the ballots areactually cast in a fraudulent manner. Certainly, there have been no allegations that the ballots at issue in this case were fraudulently cast. For these reasons, I respectfully dissent. *Page 411